*John Bennett, for appellant.*

*C. F. & A. R. Burnam, for appellee.*

---

JOHN H. WHEAT, SURVIVING PARTNER, ET AL. *v.* FRANKFORT COTTON MILLS CO. ET AL.

[Abstract Kentucky Law Reporter, Vol. 4—620.]

**Liability Under Stockholders' Agreement.**

Where a corporation is in need of funds to carry on its enterprise and the stockholders enter into an agreement in writing between themselves, by which they agree in proportion to their holdings to share any liability that any of them may assume to raise funds for the corporation, and some members become liable for such funds, the signers of such agreement become liable for their proportionate shares.

**Interpretation of Contracts.**

All contracts will be interpreted so as to arrive at the intentions of the parties to them, and the language used should receive a construction influenced by a common-sense view of the whole subject-matter and bearing of the contract between the parties.

**Extent of Liability of Parties to a Contract.**

Where stockholders of a corporation to raise money to carry on the enterprise sign an agreement to each become liable for his share of liability assumed by any of them for money to be used by the corporation, and such liability is assumed by members, and the corporation becomes insolvent, and it turns out that some of the stockholders signing such agreement are insolvent, the insolvency of such members will not add to the liability of the others, for each became liable not for the others but only in proportion to the stock owned, and the insolvency of such signing members will add only to the loss which must be sustained by the members assuming obligations for the corporation.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

January 25, 1883.

OPINION BY JUDGE PRYOR:

The parties to this appeal were members of a joint stock company known as the Frankfort Cotton Mills Co., engaged in manufacturing cotton, yarns, bags, warps, etc. The corporation was somewhat involved and also in a condition that required the raising of moneys to enable them to continue the enterprise. Wheat and Chesney were stockholders in the corporation, and were the merchants who bought supplies for the factory and sold the goods. They had been indorsing for the corporation, and feeling some uneasiness in regard to their liability refused or declined to continue liable, or raise money for the enterprise, unless they were in some manner indemnified. With a view of obtaining this indemnity to themselves as well as others of the corporation, at a meeting held by the stockholders on the 21st day of October, 1874, at the office of the company in Frankfort, the following agreement was entered into by the stockholders:

"Office of The Frankfort Cotton Mill Company.
"manufacturers of cotton, yarns, batting, warps, seamless grain bags, twine, etc.
"Milton McGrew, *President*.

"Frankfort, Ky., October 21, 1874.

"Whereas, in conducting the business of the Frankfort Cotton Mill Company it is necessary that some of the stockholders shall indorse bills and notes payable in bank, or otherwise to raise money for the use of the company, now therefore we, the undersigned holders of stock in said company, mutually agree to and with each other that each of us shall be equally responsible with any and all who may indorse such bills and notes or either, and that if any one of the undersigned shall become liable, or have to pay anything on account of such indorsements, we each of us bind ourselves to contribute to the payment of such liability to such indorser and the holder of any such bill or note in proportion to the amount of stock in said company held by us respectively, so that each one of us shall pay his proper proportion of such liability, and that no one shall pay more than in proportion to the stock held by him. But it is agreed that such indorsements in the aggregate shall not at any time exceed the sum of thirty-eight thousand dollars.

"In testimony whereof, we, the undersigned, have hereunto set our names this 21st of October, 1874.

<blockquote>
"Milton McGrew,<br>
"Wheat & Chesney,<br>
"John W. Scott,<br>
"W. T. Scott by John W. Scott,<br>
"Lucy W. Scott by John W. Scott,<br>
"Mary T. Dudley by John W. Scott,<br>
"Mary T. Skillman by John W. Scott,<br>
"J. Walcutt,<br>
"W. P. D. Bush,<br>
"Charles Bromley."
</blockquote>

Chesney, one of the members of the firm of Wheat & Chesney, died, and in January, 1878, Wheat, as surviving partner, instituted the present action in equity, alleging the insolvency of the Frankfort Cotton Mill Co., and that in the years 1877 and 1878 the firm

of Wheat, Chesney & Co. had become the indorsers, drawers, acceptors, etc., on paper of the company amounting to a sum exceeding thirty-eight thousand dollars. The notes, bills, etc., or copies, are made exhibits in this record. Wheat alleges a payment of part of this sum and the liability of the firm for the balance, and asked the chancellor to compel the appellees, by reason of the agreement filed, to contribute with the firm in the payment of this indebtedness in proportion to the amount of stock held and owned by them in the corporation. Upon the hearing of the case the chancellor below adjudged that the company was liable to Wheat & Chesney for the amount of money actually paid by them for the company, and dismissed the petition as against the other appellees, in which they were asked to be made to contribute by reason of the agreement of the 21st of October, 1874.

The insolvency of the company seems to have been conceded, and that fact is also demonstrated by the record before us, and the only question raised by this appeal is as to the liability of the joint stockholders who signed the agreement. It is insisted first that a party can not be an obligor and an obligee on the same paper. This principle can not apply here, any more than it would any other partnership transaction or joint enterprise. Partners become bound by reason of their interest in the common adventure, and where liabilities of the firm have been assumed by one partner and the partnership assets are insufficient to pay the debts, the other partner as between the two may be compelled to contribute. In a corporation like this the stockholder is only liable individually to the extent of stock subscribed, but he may increase his stock or he may by an agreement between the stockholders increase his liability.

Here Wheat & Chesney declined to continue their liability and the stockholders, who are appellees, entered into an agreement by which they agreed to become liable as between themselves for any debt the stockholders or either of them might as indorsers become liable for on account of moneys raised for the use of the company. It was an understanding to which the corporation itself was not a party, but the stockholders said to each other, "Proceed to raise the money for the use of the firm, not exceeding thirty-eight thousand dollars, and to that extent we will contribute in proportion to the amount of stock held by each." Under such an agreement we can not perceive any reason for denying to the stockholder who

has assumed such a liability for the firm, the right in equity to compel the other stockholders to contribute. The firm is insolvent and the indorser must pay the entire debt or the other stockholders share the loss with him, and we think they ought in equity to contribute by reason of the agreement entered into between them.

It is maintained also that the paper is a guaranty, and that Wheat & Chesney must have given notice of their acceptance of the offer and their willingness to become responsible for the debts of the company. There was no offer made, but an agreement fully executed by which each party became bound in proportion to his stock for thirty-eight thousand dollars in the event the stockholders or any of them assumed liabilities to that extent in the way of raising money for the company. This agreement when signed was taken by the president and deposited with the Farmers' Bank, as some of the witnesses say, to show to the bank the ability of the corporation and its evidences to pay. It was necessary to discount paper and to raise money for the purposes of the company, and when a stockholder under this agreement became liable the others who signed the paper became liable at the same time to that stockholder. This was the purpose of the agreement, as it could not have been contemplated that each stockholder must sign the paper, or have notice of the intention of the stockholders to become liable upon some paper that the company was negotiating in order to raise money. The agreement was a power of attorney, in effect, from each stockholder, saying: "You can bind us for money to be raised by the firm in a sum not exceeding thirty-eight thousand dollars and we will contribute in proportion to our stock." This did not authorize the stockholder without consulting the president of the company or those managing its financial affairs to involve the company in debt, and create liabilities that were not applied to the use of the firm or paid to those whose duty it was to apply it.

For a further defense it is insisted that Wheat & Chesney were not indorsers on some of the paper, but on some they were the drawees or acceptees, and these appellees being bound alone by the agreement their liability is measured by the letter of their undertaking. This is not a case like that of a surety who has in fact received none of the consideration for his undertaking and is therefore under no moral obligation to pay. All of these parties had a personal interest in the company and its profits. They were the

parties really in interest, and all that was done in the way of raising money enured directly to the benefit of each of these stockholders. Besides, it is plain that the intention of the parties was to indemnify the stockholder who assumed a liability on account of the firm, whether he stood as drawer, indorser or acceptor. The question is, Was the money raised for the use of the company, and as between the stockholder, whether as drawer, acceptor or indorser, was the company primarily liable? If so, these appellees should contribute. All contracts should be interpreted with a view to the intention of the parties, and the language which is used should receive a construction influenced by a common sense view of the whole subject matter and bearing of the contract between the parties. The word "indorser" was not used in a mere technical sense, but was intended to comprehend all liabilities assumed by the stockholder in raising money for the firm, and where such a liability was created on the faith of the agreement the appellees are liable.

The point upon which the court below seems to have decided the case adversely to the appellant is that the latter, at the time the written agreement was entered into, represented to the stockholders that the firm of Wheat & Chesney controlled or represented 200 shares of the stock. It is alleged by the appellees in their answer that the representation was fraudulent and made for the purpose of inducing them to enter into the agreement. Several of the appellees state that such a representation was made by Wheat at the meeting and at the time the agreement was entered into, and the weight of the testimony conduces to such a conclusion. The stock in fact stood upon the books of the company in the name of Terry, Wheat & Chesney, and that firm represented the stock originally. Terry had died and the partnership dissolved, the firm of Wheat & Chesney was created, and the stock divided between the members of the firm and the executor of Terry. Terry's estate got 110 shares of the stock, Wheat 50 and Chesney 40. The stock or the manner of its original holding appeared on the books of the company and several of the stockholders knew of Terry's interest. The representative of Terry had been in a stockholders' meeting and voted his stock not long before the agreement was entered into. The proof shows that Chesney knew of the agreement and the signature of the firm's name to the paper, and this was one of the inducements for him to consent that the firm of Wheat &

Chesney should become bound on this paper. The firm of Wheat & Chesney subsequently acquired (after the execution of the writing) the interest of Terry. Wheat denies that he made any such representation, but the testimony of Bush, Scott, Walcutt and Mc-Grew is to the contrary, and it is doubtless true that he believed that he could control that much stock. The amount of each one's stock did not appear in the agreement, and this is a fact that must be made to appear by proof. We do not discover from the facts established by the appellees that Wheat made the statement with any fraudulent intent, and looking to the condition of the company at the time this writing was signed it is unreasonable to suppose that the firm of Wheat & Chesney, who now it is contended had no stock, would undertake to assume and continue to assume all the company's liabilities.

When it becomes necessary to ascertain the stock that Wheat & Chesney did represent as well as the other stockholders, if the facts show that the appellees were misled by what Wheat said, the equity of the case is to hold the firm of Wheat & Chesney as representing 200 shares of stock, as it would be inequitable upon appellees' own showing to make them shoulder the entire debt. We think the proof shows that the 40 and 50 shares were treated by Wheat & Chesney as partnership stock. They were representing their stock, at least when the firm name was signed, and then subsequent action shows the manner in which they regarded it. This is an adventure resulting in loss and under this agreement that is just and equitable these appellees ought to contribute and in the adjustment of their several liabilities the firm of Wheat & Chesney should be regarded as representing 200 shares of stock.

The last and only question connected with this agreement is as to the extent of the liability. It is suggested that some of the stockholders signing the agreement are insolvent and that this increases the liability. The governing rule, the intention of the parties must control, and we think a careful reading of the contract indicates clearly that the only liability assumed was in proportion to the stock owned, and that no greater sum was to be paid, the parties undertaking to indorse the paper risking the solvency of each of the parties to it. The limit of the liability is fixed by the writing. The aggregate liabilities shall not exceed thirty-eight thousand dollars, to be paid by each one in proportion to his stock.

If a greater liability has been sustained by reason of the indorsement it is by the indorser and not by these appellees; but the fact that the liability exceeds the amount fixed does not release these appellees. Our attention has been called alone to the questions raised as to the effect of this agreement, and so far as the settlement between the parties is concerned, or the claim against the corporation by any of its members, or any other defense made below, the question is left open for the reason that the chancellor denied the relief upon the ground the parties were not bound by the written agreement. The questions made as to the liability of the appellees in the writing are decided adversely to the latter.

The judgment is *reversed,* and the questions as to the condition of the company and the amount of property in the hands of Wheat & Chesney belonging to the company and unaccounted for are left open, as they must necessarily enter into a settlement of the accounts between these parties as well as in the settlement of the insolvent corporation.

*W. Lindsay, A. Duvall, A. J. James, J. B. James, for appellants.*
*D. W. Lindsay, John L. Scott, W. P. D. Bush, for appellees.*